UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| LINDA J. NOFZIGER, | ) | Case No. 6:04-bk-09253-KSJ |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| MITCHEL KALMANSON, | ) | |
| | ) | Adv. Pro. 06-ap-00035 |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| LINDA NOFZIGER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| In re | ) | |
| | ) | Case No. 6:05-bk-03222-KSJ |
| NANCY LYNN ADAMS, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| MITCHEL KALMANSON, | ) | Adv. Pro. 05-ap-00185 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| NANCY LYNN ADAMS, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION PARTIALLY GRANTING
AND PARTIALLY DENYING DEFENDANT'S
MOTION TO DISMISS AMENDED COMPLAINT IN AP. NO. 06-35
AND GRANTING DEFENDANT'S MOTION TO DISMISS
<u>SECOND AMENDED COMPLAINT IN AP. NO. 05-185</u>

In these two consolidated adversary proceedings, the plaintiff/creditor, Mitchel Kalmanson, argues that the alleged debt due to him by the two defendants/debtors, Linda Nofziger and Nancy Adams, is not dischargeable, under Section 523(a)(6) of the Bankruptcy

Code,[1] because the debt arose from a "willful and malicious injury." These alleged injuries arose during the course of a very contested divorce between Kalmanson and his former wife, Donna. The debtors, Adams and Nofziger, are both acquaintances of Donna. They assisted her in the divorce, and Kalmanson says that, in the process of helping Donna, they defamed him and participated in a civil conspiracy whose sole purpose was to harm him.

Kalmanson initially sued the debtors for their actions in the Florida state courts.[2] When both debtors filed these bankruptcy cases, he, in turn, filed the two pending adversary proceedings asserting similar claims. The Court previously has dismissed the initial complaint filed in both adversary proceedings, holding that the prior complaints failed to state a claim for nondischargeability against the debtors;[3] however, Kalmanson was given the opportunity to file an amended complaint, which he did. The debtors now ask this Court to dismiss the amended complaints, again asserting that they fail to state a claim upon which relief can be granted.[4] For the reasons explained below, the Court will grant Adam's motion to dismiss and will partially grant Nofziger's motion to dismiss, holding that Kalmanson has properly pled one count of defamation against her.

---

[1] Unless otherwise stated, all references to the Bankruptcy Code herein refer to Title 11 of the United States Code.

[2] The lawsuit was filed in Lake County, Florida, and was assigned Case No. 03-CA-2679-16-L.

[3] The orders dismissing the prior complaints were entered on June 28, 2006 (Doc. No. 52 in Adversary Proceeding 05-185 and Doc. No. 19 in Adversary Proceeding 06-35). The Court also notes that in the proceeding involving Ms. Adams, Adv. Proceeding 05-185, the Court also had dismissed an even earlier complaint (Doc. Nos. 1, 9, 11, and 32).

[4] The relevant complaints are Kalmanson's Amended Complaint in Adversary Proceeding No. 06-35 (Doc. No. 24) and the Second Amended Complaint in Adversary Proceeding No.05-185 (Doc. No. 55) (the "Complaints). Nofziger's Motion to Dismiss the Amended Complaint and related memorandums and pleadings are found at Document Numbers 26, 27, 29, 30 and 32 in Adversary Proceeding No. 06-35. Adams Motion to Dismiss the Second Amended Complaint and related memorandum and pleadings are contained in Document Numbers 56 and 57 in Adversary Proceeding No. 05-185.

Kalmanson's allegations against Nofziger and Adams are similar but not identical. In Count 1 of both Complaints, Kalmanson alleges that the defendants conspired to commit criminal practices. In Count 2 of Adams' Complaint and in Count 3 of Nofziger's Complaint, Kalmanson alleges that the defendants conspired to commit defamation. In Count 2 of Nofziger's Complaint, Kalmanson alleges that Nofziger directly defamed him. Therefore, as to Adams, the only allegations are that she participated in a conspiracy with Nofziger either to commit criminal acts or to defame Kalmanson. As to Nofziger, Kalmanson alleges the same conspiracy counts but also includes a separate count for defamation. In both cases, Kalmanson seeks a non-dischargeable judgment for certain costs and damages for alleged willful and malicious injuries pursuant to Bankruptcy Code Section 523(a)(6).

The defendants assert the Complaints should be dismissed for failing to state any cognizable tort they committed against Kalmanson that could result in a nondischargeable debt under Section 523(a)(6).[5] In considering motions to dismiss a complaint for failure to state a claim upon which relief could be granted, the reviewing court must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. Financial Security Assur., Inc. v. Stephens, Inc., 450 F.3d 1257, 1262 (11th Cir. 2006) (citing Roberts v. Fla. Power & Light Co., 146 F.3d 1305, 1307 (11th Cir.1998)). "[A] a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Financial Security, 450 F.3d at 1262 (citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The threshold of sufficiency that a complaint must meet to survive a motion to dismiss for

---

[5] Nofziger also argues that Kalmanson's defamation claim against her is barred by the statute of limitations.

failure to state a claim is, as we have stated previously, 'exceedingly low.' " Financial Security, 450 F.3d at 1262 (citing Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11th Cir.1985) (citing Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev., 711 F.2d 989, 995 (11th Cir.1983))). "That said, 'while notice pleading may not require that the pleader allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim, it is still necessary that a complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.' " Financial Security, 450 F.3d at 1262 (citing Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quoting In re Plywood Antitrust Litig., 655 F.2d 627, 641 (5th Cir. Unit A, 1981))).

### Kalmanson's Conspiracy Claims Fail to State a Cause of Action under Section 523(a)(6) of the Bankruptcy Code

To say that Kalmanson's divorce was contested is a huge understatement. The divorce action has lasted years, has involved innumerable contested matters, and is still on-going. Kalmanson believes that the defendants' actions have increased the antagonism in his divorce and are responsible for additional attorney fees he has incurred. He asserts that Nofziger and Adams participated in a conspiracy to take various criminal acts designed to harm him in the divorce and to defame him.

In the earlier versions of the complaints filed against the defendants, the Court held that Kalmanson failed to allege the necessary elements to establish such a conspiracy, any underlying actionable wrong, and any special power of economic coercion held by the co-conspirators that would allow an independent action of civil conspiracy to proceed.[6] In discussing how

---

[6] Under Florida law, "[a]n actionable conspiracy requires an actionable underlying tort or wrong." Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1217 (11th Cir. 1999).

Kalmanson failed to establish a conspiracy, this Court observed that the "plaintiff fails to identify the co-conspirators, fails to identify any agreement between the co-conspirators, fails to identify the purpose of the conspiracy, and fails to identify any specific acts taken by the co-conspirators, other than to include a laundry list of various generalized, ambiguous 'improper, tortuous, and/or unlawful acts.'" (Adv. Pro. 05-185, Doc. 30, p. 5).

The current Complaints fail to correct these deficiencies. Kalmanson now divides his conspiracy allegations into two categories—conspiracy to commit criminal acts and conspiracy to defame. In connection with the conspiracy to commit criminal practices, Kalmanson asserts that the defendants formed an enterprise with Kalmanson's ex-wife, Donna, and her divorce lawyer, Richard Ducote, to commit certain criminal activities and other wrongs in connection with the divorce.

The criminal improprieties that the defendants allegedly committed fall into three categories. First, Kalmanson alleges that Adams used the personal identification information of two witnesses, Susan Hawthorne and Glenda Harvey, to obtain private medical and automobile insurance records of those witnesses that Adams then provided to Nofziger, who gave them to Donna, who, in turn, gave them to Ducote to use to Donna's benefit in the divorce in violation of

Florida Statutes 817.02[7] and 817.568.[8] Second, Kalmanson alleges that Nofziger and Adams engaged in the unlicensed and unauthorized investigation of Kalmanson and witnesses. Third, Kalmanson asserts that the defendants engaged in the unlicensed practice of law.

To support his criminal conspiracy allegations, Kalmanson attached "Exhibit A" to the Complaints, which is an "Order Imposing Sanctions on the Former Wife" (Donna) entered in the divorce case[9] and dated April 8, 2003 (the "Sanctions Order"). The circuit court judge specifically found in the Sanctions Order that:

> On or about March 20, 2003, Nancy Adams, a witness and friend of the Former Wife, obtained confidential medical records of Susan Hawthorne, a witness and friend of the Former Husband. Nancy Adams did this by falsely

---

[7] Florida Statute 817.02 provides as follows:

817.02. Obtaining property by false impersonation

Whoever falsely personates or represents another, and in such assumed character receives any property intended to be delivered to the party so personated, with intent to convert the same to his or her own use, shall be punished as if he or she had been convicted of larceny.

[8] As relevant, Florida Statute 817.568 provides as follows:

817.568. Criminal use of personal identification information

(2)(a) Any person who willfully and without authorization fraudulently uses, or possesses with intent to fraudulently use, personal identification information concerning an individual without first obtaining that individual's consent, commits the offense of fraudulent use of personal identification information, which is a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

(4) Any person who willfully and without authorization possesses, uses, or attempts to use personal identification information concerning an individual without first obtaining that individual's consent, and who does so for the purpose of harassing that individual, commits the offense of harassment by use of personal identification information, which is a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

(14) Prosecutions for violations of this section may be brought on behalf of the state by any state attorney or by the statewide prosecutor.

[9] The divorce case is pending in Lake County, Florida and is assigned Case No. 99-178-CA-01.

> representing herself to Target pharmacy as Susan Hawthorne. She delivered the records to Linda Nofziger, who in turn delivered them to the Former Wife. Linda Nofziger is a witness and friend of the Former Wife who has worked as an unofficial investigator with her tacit approval. Linda Nofzinger [sic] has furnished the attorney with background information on eight or more witnesses. The Former Wife delivered the medical records to her attorney to use in taking Susan Hawthorne's deposition. She furnished them to the attorney on March 24, 2003, the morning of the deposition. Mr. Ducote used the records in taking Susan Hawthorne's deposition.
>
> On or about March 27, 2003, Nancy Adams obtained insurance records of Glenda Harvey from Progressive Insurance Company by representing herself as Glenda Harvey. She had the records faxed directly to Linda Nofziger. Linda Nofziger delivered the records to the Former Wife, to Mr. Ducote, or to Mr. Ducote's staff.

The judge then ruled that Donna was "prohibited from using the prescription drug records of Susan Hawthorne and the insurance records of Glenda Harvey in any way or disclosing the records or their contents to third parties" and specifically "reserve[d] jurisdiction to award attorneys' fees and costs to the Former Husband."

Turning to the second conspiracy category, that the defendants conspired to defame Kalmanson, the Complaints assert that Nofziger made two false police reports—once regarding a suspicious incident involving Nofziger's six-year-old daughter and one asserting that Kalmanson abused animals. The Complaints list *no* alleged defamatory statement made by Adams, although Nofziger previously may have talked with Adams about Kalmanson.

The Complaints fail to list any possible defamatory statement made by Nofziger, with one exception. For example, the Complaints, other than the bare assertion that a false animal abuse report was filed, fail to list any supporting statement made by either defendant of animal abuse. However, on Exhibit B attached to the Complaints, on September 26, 2002, Nofziger supplied additional information to the police that Kalmanson was "going to get me!," and that

Kalmanson "wanted me [Nofziger] more than he wanted his ex-wife, and that Kalmanson previously had threatened his ex-wife on numerous occasions." Nofziger concluded, at least as recorded by the police officer, by saying, "I have no choice to believe that this man [Kalmanson] has every intention of 'killing' or getting rid of me or harming one of my children."

For the purposes of the pending motions to dismiss, the Court must assume that Nofziger made these statements. Further, the Court will assume that all of the conspiracy allegations in the Complaints are true and then evaluate whether the allegations, directly or inferentially, plead all material elements necessary to obtain a finding that any debt due by the defendants to Kalmanson is nondischargeable.

To prevail under Bankruptcy Code Section 523(a)(6), Kalmanson must prove by a preponderance of the evidence that the defendants: 1) deliberately and intentionally, 2) injured Kalmanson or Kalmanson's property, by 3) a willful and malicious act. In re Howard, 261 B.R. 513, 520 (Bankr. M.D. Fla. 2001) "[A]n injury is willful when the debtor commits an intentional act for the purpose of causing injury or which is substantially certain to cause injury." Id. See also, Hope v. Walker (In re Walker), 48 F.3d 1161, 1165 (11th Cir.1995). An act that is merely reckless is not a "willful act" for the purposes of Section 523(a)(6). Id. An act is malicious if it is one which is "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill will." Id., citing Walker, 48 F.3d at 1163-64. Following the Walker decision, the United States Supreme Court clarified the term "willful" contained in Section 523(a)(6), stating that:

> The ⋯ word willful modifies the word injury, indicating that nondischargeability takes a deliberate or intentional injury, not merely ⋯ a deliberate or intentional act that leads to injury⋯. Moreover, § 523(a)(6)'s formulation triggers in the lawyer's mind the category intentional torts, as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend the consequences of an act, not simply the act itself.

Kawaauhau v. Geiger, 523 U.S. 57, 57-58, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (internal quotations omitted). Thus, Kalmanson must show willful acts by the defendants which would be substantially certain to cause injury in order to obtain a nondischargeable judgment against them for any resultant damages.

The interesting issue raised by the defendants' motions to dismiss are whether a conspiracy claim can substitute for the intentional tort typically required to make a debt nondischargeable under Section 523(a)(6). The Court holds it is not. The established law is clear that a debtor must commit some type of intentional tort directed against the claimant or his property in order for a court to find that the resulting damages are nondischargeable. See, generally, In re Gray 322 B.R. 682, 695-696 (Bankr.N.D.Ala.2005) (Debtor's sexual abuse of creditor qualified for willful and malicious exception to discharge); In re Auffant, 268 B.R. 689 (Bankr. M.D. Fla. 2001) (willful and malicious injury established where debtor filed a false insurance claim); In re Houston, 305 B.R. 111, 116 (Bankr.M.D.Fla.2003) (false insurance claim was willful and malicious); In re Rowland, 316 B.R. 759 (Bankr.S.D.Ga.2004) (debtor's conversion willful and malicious) In re Johnson, 301 B.R. 590 (Bankr.N.D.Ala.2003) (same); In re Shaw, 252 B.R. 211, 214 (Bankr.M.D.Fla.2000) (debtor's solicitation of arson resulted in extensive financial injury to creditor constituting a deliberate and malicious intentional injury toward creditor); In re Berghman, 235 B.R. 683, 692 (Bankr.M.D.Fla.1999) (theft constitutes a willful and malicious injury); In re Lucotch 342 B.R. 469, 472 (Bankr.W.D.Pa.2006) (judgment debt for assault and/or battery was nondischargeable under § 523(a)(6)); In re Chapman, 46 B.R. 90 (Bankr. N.D. Ohio 1985) (same); In re Gee, 156 B.R. 291 (Bankr. W.D. Wash. 1993), *aff'd in part, rev'd in part*, 173 B.R. 189 (9th Cir. BAP 1994) (debtor's sexual harassment of employee gave rise to nondischargeable debt under Bankruptcy Code Section 523(a)(6)); In re Moffitt, 252 B.R. 916 (B.A.P. 6th Cir. 2000) (debtor's intentional infliction of emotional distress was willful

and malicious injury resulting in nondischargeable debt); In re Abbo, 168 F.3d 930 (6th Cir.1999) (debtor's malicious prosecution of lawsuit resulted in nondischargeable debt); Wheeler v. Laudani, 783 F.2d 610 (6th Cir.1986) ("intentional tort of libel meets the requirements of § 523(a)(6) when the debtor/author knows the published statements were false.").

Each of these examples illustrate the basic principle—that, in order to find a debt nondischargeable under § 523(a)(6), the debtor directly must commit some type of malicious, intentional tort which the debtor knew would cause harm to the creditor. A conspiracy, i.e., an agreement, to commit a tort or other wrong does not qualify. Actions taken against parties *other* than the claimant do not qualify. Nor does action taken by someone other than the debtor qualify. See In re Eggers, 51 B.R. 452, 453 (Bankr.Tenn.1985) ("Section 523(a)(6) excepts from discharge a willful and malicious injury *by the debtor* to another entity. The legislative history accompanying § 523(a)(6) indicates that a debt is nondischargeable only where injury has resulted from some deliberate or intentional act *of the debtor*…") (emphasis in original). Simply stated, a co-conspirator's acts can not suffice to establish the elements of Bankruptcy Code Section 523(a)(6), unless the acts were taken directly by the debtor against the objecting creditor. Participation in a conspiracy is not enough to establish the intentional wrong needed to make a debt nondischargeable.

Bankruptcy is a uniquely personal act. The debtor's right to receive a discharge is a personal right, which should not be denied lightly. "Objections to discharge are to be strictly construed against the creditor and liberally in favor of the debtor." In re Maxwell, 334 B.R. 736, 741 (Bankr. M.D. Fla. 2005) (citing In re Hunter, 780 F.2d 1577, 1579 (11th Cir.1986); In re Bernard, 152 B.R. 1016, 1017 (Bankr.S.D.Fla.1993)). 'Any other construction would be inconsistent with the liberal spirit that has always pervaded the entire bankruptcy system.' Maxwell, 334 B.R. at 741 (quoting 4 COLLIER ON BANKRUPTCY ¶ 523.05, at 523-24 (15th

ed. rev. 2005)). Therefore, in order to establish that a particular debt is nondischargeable, at a minimum, the creditor must establish that the debtor, not someone else in a chain of co-conspirators, took the offensive act and that the act was directed at the creditor, not someone else.

Kalmanson's conspiracy theory flies in the face of this principle. Kalmanson fails to cite a single case holding that a conspiracy claim is nondischargeable under Bankruptcy Code Section 523(a)(6). He further fails to allege any willful act taken by either Nofziger or Adams (with the exception of the separate defamation count against Nofziger which will be discussed below) substantially certain to injure him or his property.

Rather, in connection with Kalmanson's allegations that the defendants conspired to commit criminal acts, he alleges that Adams obtained the personal identification information and private records of Susan Hawthorne and Glenda Harvey. If these allegations are true, certainly Hawthorne or Harvey may have a claim against Adams. Further, the actions may constitute a crime for which a state prosecutor could levy criminal charges. However, nothing in the allegations establishes an intentional tort by Adams (or Nofziger) as contemplated in Kawaauhau. The defendants took no actions against Kalmanson. They did not seek to obtain his personal identification information or any of his private records. Rather, they sought the information against third parties, who are not asserting any claim in this bankruptcy. Any link between the defendants' actions in taking or attempting to use the private records of Hawthorne and Harvey is simply too tenuous to establish an intentional tort against Kalmanson sufficient to satisfy the standard articulated in Kawaauhau.

Similarly, Kalmanson's two other criminal conspiracy theories—that the defendants conducted an unauthorized investigation and that they engaged in the unlicensed practice of law—also fail to establish any type of intentional tort he could assert against the defendants. If

the defendants did conduct an unauthorized investigation or held themselves out as attorneys when they are not, the proper remedy is for a state prosecutor or for a representative of the Florida Bar to take the appropriate prosecutorial action.

Kalmanson, as a private citizen, simply lacks the authority or the ability to assert these criminal claims. He is not a public prosecutor or other similarly situated individual with standing to bring a criminal action. Saucer v. State, 779 So.2d 261 (Fla. 2001) ("ordinarily, only the State can initiate a criminal action."). Moreover, Florida Statute Section 817.568(14) specifically provides that "[p]rosecutions for violations of this section may be brought on behalf of the state by any state attorney or by the statewide prosecutor." Kalmanson cannot bootstrap a possible criminal violation into some new type of intentional tort that would allow him to obtain a nondischargeable judgment against the defendants.

Further, one cannot "conspire" to defame another. A bankrupt debtor certainly could make a defamatory statement and, as a result, lose her right to discharge a resultant debt. However, other debtors are not liable for defamatory statements made by a particular debtor. Kalmanson has failed to establish that a conspiracy allegation could ever serve as a basis to establish the type of willful and malicious injury necessary to obtain a nondischargeable judgment under Section 523(a)(6).

Accordingly, the Court will grant the Motions to Dismiss as to both conspiracy counts holding that they fail to state a claim upon which relief can be granted. The Second Amended Complaint against Adams shall be dismissed in toto. However, only Counts 1 and 3 of the Amended Complaint filed against Nofziger shall be dismissed. The Court now will turn its attention to Count 2, the defamation count Kalmanson has asserted directly against Nofziger in his Amended Complaint against her.

Kalmanson Has Stated a Claim for Defamation against Nofziger under Section 523(a)(6) of the Bankruptcy Code

Defamation is defined as "the unprivileged publication of false statements which naturally and proximately result in injury to another." Wolfson v. Kirk, 273 So.2d 774, 776 (Fla.App. 1973) (citing Cooper v. Miami Herald Pub. Co., 159 Fla. 296, 299-300, 31 So.2d 382, 384 (Fla. 1947); Delacruz v. Peninsula State Bank, 221 So.2d 772, 775 (Fla. App.1969). The elements of a cause of action for defamation are: (1) the defendant published a false statement, (2) about the plaintiff, (3) to a third party, and (4) the falsity of the statement caused injury to the plaintiff.  Bass v. Rivera, 826 So.2d 534, 535 (Fla. 2nd DCA 2002) (citing Valencia v. Citibank Int'l, 728 So.2d 330, 330 (Fla. 3d DCA 1999).

Malice is an essential element of the tort of defamation. Wolfson, 273 So.2d at 776. "Actual malice is established by showing that the publication was made with knowledge that it was false or with reckless disregard of whether it was false or not." Hoch v. Rissman, Weisberg, Barrett, 742 So.2d 451, 460 (Fla.App. 5 Dist.1999) (citations omitted). However, no showing of malice is required where a statement is considered actionable *per se*. Wolfson, 273 So.2d at 776. A "communication is actionable *per se*—that is, without a showing of special damage—if it imputes to another . . . a criminal offense amounting to a felony… or conduct, characteristics or a condition incompatible with the proper exercise of his lawful business, trade, profession or office…" Id. (citing Campbell v. Jacksonville Kennel Club, 66 So.2d 495, 497 (Fla. 1953)).

Here, in addition to his general allegations that Nofziger made unidentified defamatory statements, Kalmanson relies on specific statements recorded when she made a supplemental report to the police on September 26, 2002, recited in detail on page 7 above. After examining the relevant sentences, the Court finds that Count 2 of the Amended Complaint sufficiently states that Nofziger made these allegedly false statements about Kalmanson to a third party and that

Kalmanson may have suffered some damages.  The allegations state a claim for defamation, and, if all the elements later are proven by Kalmanson, a resultant debt could be nondischargeable under Section 523(a)(6).

Finally, Nofziger argues that Kalmanson's defamation claim against her is barred by the statute of limitations.  Florida has a two-year limitations period for defamation actions. Fla. Stat. § 95.11(4)(g). Florida courts have held that a cause of action for defamation accrues on publication of the allegedly defamatory material. Dessasau v. Cook, 2001 WL 34395880, *3 (11th Cir. 2001) (not reported) (citing Wagner, Nugent, Johnson, Roth, Romano, Erickson & Kupfer, P.A. v. Flanagan, 629 So.2d 113, 114-15 (Fla.1993)).

In terms of the relevant dates, the Incident Report was initially filed on August 26, 2002, and later supplemented on September 26, 2002. (The reporting police officer appears to have attested to the accuracy of the report on November 12, 2002).  Kalmanson did not provide any dates when the other unidentified allegedly defamatory statements were made, other than that Nofziger allegedly made them "[d]uring or about 2002", so it is not possible to tell whether or not the limitations period expired in connection with that particular alleged act of defamation.

Nofziger filed her bankruptcy case on August 12, 2004. Kalmanson filed the Initial Complaint against Nofziger on January 26, 2006, and the Amended Complaint on July 14, 2006.

Bankruptcy Code Section 108 provides, in relevant part:

(c) …if applicable nonbankruptcy law… fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor. . .and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

    (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

    (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

Accordingly, the time period in which Kalmanson may bring a defamation action against Nofziger was tolled until 30 days after the expiration of the automatic stay, which had not occurred as of the date Kalmanson initiated this adversary proceeding. As such, based upon the sketchy information pled in the Amended Complaint, it does not appear, at least upon a motion to dismiss, that the statute of limitations has expired. Of course, upon introduction of evidence, this ruling may change, depending upon the dates the various statements were made.

Therefore, for the reasons stated above, the Court will partially grant and partially deny the defendants' motions to dismiss. The Second Amended Complaint against Adams shall be dismissed in toto. Counts 1 and 3 of the Amended Complaint against Nofziger shall be dismissed. The Court will deny the motions to dismiss as to Count 2 of the Amended Complaint against Nofziger and only that count shall proceed to trial. A separate order consistent with the Memorandum Opinion shall be entered contemporaneously herewith.

DONE AND ORDERED in Orlando, Florida, on the 27th day of November, 2006.

KAREN S. JENNEMANN
United States Bankruptcy Judge

Copies provided to:

Debtor/Defendant:  Linda J. Nofziger, 24320 County Road 44A, Eustis, FL  32726

Debtor/Defendant's Attorney:  Arlys L. Buschner, Esquire, 1320 N. Semoran Blvd., Suite 104, Orlando, FL  32807

Debtor/Defendant:  Nancy L. Adams, 101 Southeast 6th Avenue, Delray Beach, FL  33483

Debtor/Defendant's Attorney:  Michael A. Paasch, Mateer & Harbert PA, P.O. Box 2854, Orlando, FL  32802

Creditor:  Mitchel Kalmanson, P.O. Box 94008, Maitland, FL  32794-0008

Creditor's Attorney:  David McFarlin, 1851 West Colonial Drive, Orlando, FL  32804

Trustee:  Carla Musselman, 1619 Druid Road, Maitland, FL  32751

Trustee's Attorney:  John H. Meininger, III, P.O. Box 1946, Orlando, FL  32802

United States Trustee, 135 W. Central Blvd., Suite 620, Orlando, FL  32801